IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| RODERICK OHLSEN,<br><br>    Plaintiff,<br><br> v.<br><br>COUNTY OF SAN JOAQUIN; SAN JOAQUIN COUNTY SHERIFF'S DEPARTMENT; SAN JOAQUIN SHERIFF BAXTER DUNN; SAN JOAQUIN COUNTY SHERIFF'S DEPUTY ROBERT SEMILLO; SAN JOAQUIN COUNTY SHERIFF'S SERGEANT JONES; and SAN JOAQUIN COUNTY SHERIFF'S DEPUTY NESBITT,<br><br>    Defendants. | 2:06-cv-2361-GEB-GGH<br><br>ORDER<sup>*</sup> |

    Plaintiff Roderick Ohlsen ("Plaintiff") and Defendants County of San Joaquin ("the County"), the San Joaquin County Sheriff's Department ("SJSD"), Sheriff Baxter Dunn ("Dunn"), Deputy Robert Semillo ("Semillo"), Sergeant Michael Jones ("Jones"), and Deputy John Nesbitt ("Nesbitt") (collectively, "Defendants") filed cross-motions

---

  * The caption has been modified to reflect dismissal of the doe defendants, as stated in the Status (Pretrial Scheduling) Order filed January 24, 2007. This matter was determined to be suitable for decision without oral argument. L.R. 78-230(h).

1

for summary judgment on Plaintiff's 42 U.S.C. § 1983 claims and state law claims arising out of Defendants' use of a police dog during Plaintiff's arrest.

## FACTUAL BACKGROUND

On October 6, 2005, Plaintiff's wife Jocelyn Ohlsen ("Jocelyn") dialed 911 during an argument she was having with Plaintiff in their residence. (Pl.'s Statement of Undisputed Facts in Opp'n to Defs.' Mot. for Summ. J. ("SUF") ¶ 2.) Plaintiff grabbed Jocelyn's wrist and hung up the phone, interrupting Jocelyn's call. (Id. ¶¶ 3-4.) When the 911 dispatch operator called back, Plaintiff answered and Jocelyn "yelled," "[S]end someone here." (Id. ¶ 5.)

As a result of these phone calls, Semillo responded to Plaintiff's residence. (Id. ¶¶ 6-7.) By the time Semillo arrived, Plaintiff had left the residence. (Id. ¶ 7.) Semillo testified that Jocelyn asked him to obtain a restraining order against Plaintiff, but Jocelyn denies making this request. (Id. ¶ 8.) A restraining order was issued later that evening. (Id. ¶ 9.)

After midnight, SJSD received a phone call from one of Plaintiff's neighbors, advising that Plaintiff had returned home. (Id. ¶ 11.) Semillo returned to Plaintiff's residence and was flagged down by Jocelyn who was outside the residence. (Id. ¶ 12.) Jocelyn told Semillo that Plaintiff was in the house and had access to a gun, though the parties dispute precisely what Jocelyn told Semillo about Plaintiff's gun. (See id.) Semillo testified that Jocelyn told him Plaintiff "had a gun" and that she believed the gun was "in the bedroom where [Plaintiff] was at." (Decl. of Donald Cook in Supp. of Pl.'s Mot. for Summ. J. ("Cook Decl."), Ex. C ("Semillo Dep.") at 39:9-18.) Jocelyn testified that she said "Plaintiff has a gun in the

2

house and I'm not sure if he is going to use it or not." (Cook Decl., Ex. D ("Jocelyn Dep.") at 43:1-3.)

Semillo telephoned Plaintiff's residence, spoke to Plaintiff on the phone, and asked Plaintiff to come out of his residence. (SUF ¶ 15.) Plaintiff refused to come outside and told Semillo he was going to bed. (Id. ¶ 16.) After Plaintiff refused to come out, Semillo, Jones and Nesbitt ("the officers") went to the front door, knocked and rang the doorbell several times. (Id. ¶ 17.) Plaintiff did not answer the door. (Id. ¶ 18.) Semillo asked Jocelyn for permission to enter the residence. (Jocelyn Dep. at 53:24-25.) Jocelyn said "yes" and gave Semillo the keys to the residence. (Id. at 54:1-2.) Semillo used the keys to unlock Plaintiff's front door. (Id. at 54:3-4.) The officers did not have a warrant to enter Plaintiff's home or to arrest Plaintiff. (Semillo Dep. at 64:24-66:2.)

The officers waited for five to eight minutes for Plaintiff to voluntarily surrender before they entered the residence. (SUF ¶ 21.) Before entering the residence, Semillo gave two separate announcements which consisted of identifying himself as a sheriff's deputy and advising that unless Plaintiff surrendered himself, a police dog would be released into the house and there was a possibility of being bitten. (Id. ¶ 23.) Plaintiff did not respond to the warnings, though Plaintiff testified he did not hear the warnings. (Id. ¶ 24.)

After waiting one minute for Plaintiff to respond, a police dog was released off-leash into Plaintiff's residence. (Id. ¶¶ 24-25.) Semillo gave the dog a "search command," which is supposed to order the dog to find someone and bite them until ordered to let go.

3

(Semillo Dep. at 68:2-19.)  Semillo, Jones and Nesbitt did not announce their presence in the home or give another verbal warning about the police dog. (Id. at 58:21-25.)  The dog went to Plaintiff's bedroom door, which was closed, and jumped and scratched on it, indicating that a person was inside the room. (Id. at 60:13-14.)  One of the officers opened the bedroom door and allowed the police dog to go in. (Id. at 74:20-22.)

The dog went into the bedroom and bit Plaintiff, who was on his bed. (SUF ¶ 27.)  Exactly what happened next is disputed. Semillo testified that Plaintiff tried to push the dog away, but Plaintiff denies that he tried to push the dog, and instead testified that he only attempted to protect his throat. (Semillo Dep. at 78:11-16; Cook Decl., Ex. E ("Pl. Dep.") at 58:21-25.)  Semillo testified that he ordered Plaintiff to lay down and "stop struggling with the dog," but Plaintiff testified that the officers' only instructions to him were to "stop resisting." (Semillo Dep. at 79:12-17; Pl. Dep. at 55:11-24.)  Semillo said he did not see a gun or weapon in Plaintiff's hands or nearby. (Semillo Dep. at 78:17-79:5.)  The police dog continued to bite Plaintiff for ten to fifteen seconds. (Id. at 81:1-11.)  Semillo testified that after Plaintiff "submitted" to the dog's bite, Semillo called the dog off and the dog stopped biting Plaintiff. (Id. at 81:19-22.)  The officers arrested Plaintiff and Plaintiff was ultimately convicted of spousal abuse. (SUF ¶ 29.)

Plaintiff alleges under § 1983 that Defendants violated his Fourth Amendment right against unreasonable search and seizure in three ways: (1) unlawfully entering into Plaintiff's residence without a warrant, (2) unlawfully arresting Plaintiff, and (3) using excessive

4

force when arresting Plaintiff.  Plaintiff also alleges two state law claims against the County and SJSD.

DISCUSSION

I. Warrantless Entry

A. Individual Officers

Plaintiff seeks summary judgment on his claim that the officers violated his Fourth Amendment right by entering his residence to arrest him without a warrant. (Pl.'s Mot. at 13:15-14:20.) Semillo, Jones and Nesbitt also seek summary judgment on this claim, arguing Plaintiff's Fourth Amendment right was not violated since the officers had valid consent to enter Plaintiff's residence, and exigent circumstances existed.[1] (Defs.' Opp'n at 8:19-11:15.)  Alternatively, these Defendants seek summary judgment on their qualified immunity defense to this claim.

"Absent consent or exigent circumstances, a private home may not be entered to . . . effect an arrest without a warrant." Donovan v. Dewey, 452 U.S. 594, 599 n.6 (1981).  Semillo, Jones and Nesbitt argue they did not need a warrant since Jocelyn consented to the entry. (Defs.' Opp'n at 10:4-6.)  Plaintiff counters that Jocelyn's consent was insufficient since Plaintiff refused to consent to the

---

[1] Plaintiff contends that "Defendants seek summary judgment on all of [Plaintiff's] claims but do not address [Plaintiff's] unlawful entry claim." (Pl.'s Opp'n at 7:5-6.)  Even though Defendants' motion does not specifically address Plaintiff's warrantless entry claim, Defendants address this claim in their opposition to Plaintiff's summary judgment motion. (See Defs.' Opp'n at 8-11.)  Since this matter may be determined as a matter of law based on the uncontroverted facts, Federal Rule of Civil Procedure 1 compels resolving the matter in this order by granting summary judgment on Plaintiff's claim for warrantless entry in favor of Dunn, Semillo, Jones and Nesbitt based on qualified immunity. See Fed. R. Civ. P. 1 (requiring that the Federal Rules of Civil Procedure be "construed and administered to secure the just, speedy, and inexpensive determination of every action").

5

entry. (Pl.'s Reply at 1:24-2:8.) "[A] warrantless search of a shared dwelling . . . over the express refusal of consent by a physically present resident cannot be justified as reasonable as to [the non-consenting resident] on the basis of consent given to the police by another resident." Georgia v. Randolph, 547 U.S. 103, 120 (2006). Plaintiff's refusal to come to the door to let the officers in, under the circumstances, constitutes Plaintiff's refusal to consent to allowing the officers to enter his residence. See United States v. Allende, 486 F.2d 1351, 1353 (9th Cir. 1973) (holding that suspect's silence implies his refusal to admit police for purposes of the "knock and announce" rule under 18 U.S.C. § 3109). Accordingly, Semillo, Jones and Nesbitt have not shown that Jocelyn's consent justified their warrantless entry.

Semillo, Jones and Nesbitt also argue that exigent circumstances justified their warrantless entry. (Defs.' Opp'n at 9:3-22.) "The exigency exception can excuse a warrant for an in-home arrest when probable cause exists and there is a compelling reason for not obtaining a warrant." Fisher v. City of San Jose, 509 F.3d 952, 960 (9th Cir. 2007). "[T]o come within the exigency exception, [Defendants] must show both that dangerous circumstances existed and that it was infeasible to obtain a warrant safely." Id. at 966. These Defendants contend exigent circumstances existed since Plaintiff had access to a gun, had refused to exit his home, and was a spousal battery suspect. (Defs.' Opp'n at 9:3-12.) A factual dispute exists as to whether Plaintiff's access to a gun some place in his residence weighs toward creating dangerous circumstances justifying the warrantless entry.
///

But notwithstanding such disputes, the individual officers argue they are entitled to prevail on this claim based on their qualified immunity defense.  This defense is decided by determining whether Plaintiff's Fourth Amendment right at issue was "clearly established," and whether "a reasonable [official] would have understood that what he was doing violated that right." Meredith v. Erath, 342 F.3d 1057, 1060-61 (9th Cir. 2003).

Although the Supreme Court held in 2006 that the consent of one co-resident does not justify a warrantless entry where another co-resident expressly refuses to consent, see Georgia, 547 U.S. at 120, at the time of the incident in 2005 a contrary rule existed in the Ninth Circuit.  See United States v. Morning, 64 F.3d 531, 536 (9th Cir. 1995) (holding that express consent of one co-resident permitted warrantless entry even where another co-resident expressly refused to consent to the entry); United States v. Murphy, 2005 WL 2416828, at *4 (D. Or. Sept. 30, 2005) (citing Morning and observing that "the Ninth Circuit has . . . held that a co-tenant's consent to the search of a residence was effective even if the other co-tenant protested"). Since the Georgia rule was not clearly established at the time of the incident, Dunn, Semillo, Jones and Nesbitt are entitled qualified immunity on this claim.  Accordingly, Dunn, Semillo, Jones and Nesbitt's summary judgment motion is granted on Plaintiff's Fourth Amendment claim for warrantless entry.

B. Municipal Liability

Plaintiff argues the County and SJSD are liable for the violation of his Fourth Amendment right against warrantless entry since the violation was caused by a municipal policy. (Pl.'s Mot. at 21:8-22:28.)  The County and SJSD counter "[P]laintiff has no evidence

to show that [D]efendants' policies were unconstitutional or fell below the standard of care."  (Defs.' Mot. at 6:10-11.)

To impose liability on the County and SJSD, Plaintiff must establish: "(1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy 'amounts to deliberate indifference' to the [P]laintiff's constitutional right; and (4) that the policy is the 'moving force behind the constitutional violation.'"  Oviatt By and Through Waugh v. Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting City of Canton v. Harris, 489 U.S. 378, 389-91 (1989)).

Plaintiff has not presented any evidence that County policy makers were deliberately indifferent to his Fourth Amendment right since, at the time of the incident, the Ninth Circuit rule permitted the warrantless entry at issue.  See Morning, 64 F.3d at 536. Therefore, these Defendants cannot be "said to have been deliberately indifferent to the need [for a different policy].'"  Oviatt, 954 F.2d at 1477-78 (quoting City of Canton, 489 U.S. at 389); see Szabla v. City of Brooklyn Park, 486 F.3d 385, 393 (8th Cir. 2007) (holding that "a municipal policymaker cannot exhibit fault rising to the level of deliberate indifference to a constitutional right when that right has not yet been clearly established").  Accordingly, the County and SJSD's summary judgment motion is granted on Plaintiff's warrantless entry claim; Plaintiff's summary judgment motion is denied on this claim.

II. Unlawful Arrest

All parties seek summary judgment on Plaintiff's claim that the officers violated his Fourth Amendment right by unlawfully arresting him.  Plaintiff indicates that his unlawful entry claim for

the officers' entry into his residence is separate from his unlawful arrest claim. (See Pl.'s Mot. at 13:15-15:1 (separately discussing the entry into Plaintiff's home and the unlawfulness of his arrest).) However, Plaintiff concedes that he "has never contended that [D]efendants 'lacked probable cause to arrest him,'" (Pl.'s Reply at 3:24-25), and instead argues that his arrest was unlawful solely because the officers' entry into his residence was unlawful. (Pl.'s Mot. at 14:24-25.) Since Plaintiff does not contend the officers lacked probable cause to arrest him, Plaintiff "cannot establish a Fourth Amendment violation based solely on the arrest," and Defendants' motion is granted on Plaintiff's claim for unlawful arrest; Plaintiff's motion on this claim is denied. See Carpenter v. City of Franklin, 2006 WL 3791931, at *9 (S.D. Ohio Dec. 22, 2006) (granting defendant's summary judgment motion on unlawful arrest claim since defendant had probable cause to arrest plaintiff, even though issue of fact existed precluding summary judgment on plaintiff's warrantless entry claim); see also Potts v. City Of Philadelphia, 224 F. Supp. 2d 919, 932-35 (E.D. Pa. 2002) (separately analyzing Fourth Amendment claim for unlawful arrest without probable cause and Fourth Amendment claim for warrantless entry).

III. Excessive Force

    A. Semillo, Jones and Nesbitt

Plaintiff seeks summary judgment on his claim that the officers violated his Fourth Amendment right by using excessive force while arresting him.[2] (Pl.'s Mot. at 16-21.) Semillo, Jones and

---

[2] Plaintiff also argues the force used against him was excessive as a matter of law since "any force used in making an unlawful arrest is unreasonable." (Pl.'s Mot. at 15:6-16.) However, "[an] excessive force (continued...)

Nesbitt also seek summary judgment on this claim, arguing the amount of force used was reasonable as a matter of law. (Defs.' Mot. at 9-12.) Alternatively, these Defendants seek summary judgment on their qualified immunity defense to this claim.

Under the Fourth Amendment, police officers may use only such force as is objectively reasonable under the circumstances. Graham v. Connor, 490 U.S. 386, 397 (1989). The excessive force analysis requires weighing the gravity of the intrusion on Plaintiff's Fourth Amendment interests against the importance of the government interest at stake. Miller v. Clark County, 340 F.3d 959, 961 (9th Cir. 2003).

Plaintiff has presented evidence showing that the intrusion on his Fourth Amendment interests was serious. (Pl. Dep. 55:25-58:15, 84:7-23.). The government interest at stake is assessed by evaluating the severity of the crime at issue, whether Plaintiff was resisting or evading arrest, and, most importantly, whether Plaintiff posed an immediate threat to the officers or others. Miller, 340 F.3d at 964 (citing Graham, 490 U.S. at 396). The summary judgment record reveals that genuine issues of material fact exist as to what Jocelyn told the officers about Plaintiff's access to a gun, what reasonable inferences may be drawn from Jocelyn's statement about Plaintiff's gun,

---

[2](...continued)
claim presents a discrete constitutional violation relating to the manner in which an arrest was carried out, and is independent of whether law enforcement had the power to arrest." Bashir v. Rockdale County, 445 F.3d 1323, 1332 (11th Cir. 2006); see also Freeman v. Gore, 483 F.3d 404, 417 (5th Cir. 2007) ("That the deputies' arrest of [plaintiff] was unlawful on the facts alleged does not, however, mean that any force used by the deputies to effectuate the arrest was necessarily excessive. Rather, [plaintiff's] excessive force claim is separate and distinct from her unlawful arrest claim, and we must therefore analyze the excessive force claim without regard to whether the arrest itself was justified.").

10

Plaintiff's behavior while being bitten by the dog, and how quickly Semillo was able to verify that Plaintiff had no weapon and did not pose a threat to the officers during the time the dog was biting Plaintiff.[3]  (See Semillo Dep. at 39:9-18, 78:17-79:5; Jocelyn Dep. at 43:1-3; Pl. Dep. at 58:21-25.)  These factual issues preclude summary judgment on the merits of Plaintiff's excessive force claim.

Semillo, Jones and Nesbitt also argue they prevail on this claim based on their qualified immunity defense.  At issue is "whether, in light of clearly established principles governing the conduct in question, the officers objectively could have believed that their conduct was lawful."  Bias v. Moynihan, 508 F.3d 1212, 1219-20 (9th Cir. 2007) (quoting Mena v. City of Simi Valley, 226 F.3d 1031, 1036 (9th Cir. 2000)).

"[T]he law surrounding excessive force in the use of police dogs was clearly established at the time of [P]laintiff's arrest." Smith v. City of Auburn, 2006 WL 1419376, at *5-6 (W.D. Wash. May 19, 2006) (holding the law was clearly established in 2002).  It was also clearly established that allowing a police dog to continue to bite a plaintiff who is unarmed and not a threat constitutes excessive force. See Priester v. City of Riviera Beach, 208 F.3d 919, 927 (11th Cir. 2000) (holding that where plaintiff "did not pose a threat of bodily

---

[3] Both sides also submitted evidence which they argue allows the issue to be determined as a matter of law in their favor.  Defendants submitted the report of a police dog expert, Brad Smith, who opined that "based on the facts and circumstances known to the sheriff's deputies, the level of force used to find and arrest [Plaintiff] was reasonable." (SUF ¶ 38.)  Plaintiff submitted evidence including depositions from witnesses in other police dog cases and a report by a commission on the use of police dogs.  (See Cook Decl., Exs. I-R.)  Each side objects to the other's evidence.  The issue of whether this evidence is admissible need not be reached since it would not change the result that there are genuine issues of material fact based on admissible evidence which preclude summary judgment.

11

harm to the officers or to anyone else" and "was not attempting to flee or to resist arrest," no reasonable officer could believe that allowing a police dog to bite the plaintiff for two minutes was reasonable force); Watkins v. City of Oakland, 145 F.3d 1087, 1090-93 (9th Cir. 1998) (holding "it was clearly established that excessive duration of the [dog's] bite and improper encouragement of a continuation of the [dog] attack by officers could constitute excessive force," and affirming denial of qualified immunity where officer did not order the dog off until the plaintiff complied with an order to show his hands).  Therefore, at issue is whether the officers "objectively could have believed that their conduct was lawful." Bias, 508 F.3d at 1219-20.

Factual issues exist as to what Jocelyn told the officers about Plaintiff's gun, what reasonable inferences may be drawn from what Jocelyn said about Plaintiff's gun, how long it took Semillo to verify that Plaintiff was not a threat to the officers' safety during the time the dog was biting Plaintiff, and whether Plaintiff resisted the dog's bite or only attempted to protect his throat.  (See Semillo Dep. at 39:9-18, 78:17-79:5; Jocelyn Dep. at 43:1-3; Pl. Dep. at 58:21-25.)  "Because there are unresolved factual issues surrounding the use of the dog, . . . [whether a reasonable officer in this situation could have believed his conduct was lawful] becomes a question for the jury." City of Auburn, 2006 WL 1419376, at *6.  Accordingly, Semillo, Jones and Nesbitt's motion on this ground is denied.

Semillo, Jones and Nesbitt also seek summary judgment on their qualified immunity defense to Plaintiff's claim that the officers were required to give another verbal warning at Plaintiff's

closed bedroom door after the police dog gave indication that the bedroom was occupied. Plaintiff does not offer evidence controverting the officers' evidence that they gave a verbal warning prior to entering Plaintiff's residence. (SUF ¶ 23.) Plaintiff contends the law was clearly established that the officers were required to give a second verbal warning at his closed bedroom door. (See Pl.'s Reply at 6-7; Pl.'s Mot. at 19:15-20:4.) The officers contend they did not repeat their warning once inside Plaintiff's house because they feared that could alert Plaintiff to their position and they had reason to believe he may be armed with a gun. (Semillo Dep. 73:19-25.) Since the law on this issue "did not put the officer[s] on notice that [their] conduct would be clearly unlawful," the officers prevail on this portion of their qualified immunity summary judgment motion. Saucier v. Katz, 533 U.S. 194, 202 (2001).

### B. Dunn

Dunn seeks summary judgment on Plaintiff's excessive force claim, arguing he is entitled to qualified immunity since Plaintiff has presented no evidence that Dunn ratified the actions of the officers, created an improper policy, or participated in the incident. (Def.'s Mot. at 17:4-5.) "In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation: there is no respondeat superior liability under section 1983." Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Since Plaintiff has failed to present evidence demonstrating Dunn's personal participation in the alleged use of excessive force, Dunn's motion for summary judgment is granted on this claim.

C. Municipal Liability

Plaintiff seeks summary judgment against the County and SJSD, arguing a municipal policy caused the officers to use excessive force in violation of Plaintiff's Fourth Amendment right. (Pl.'s Mot. at 21-22.) The County and SJSD also seek summary judgment on Plaintiff's excessive force claim against them, arguing Plaintiff has not presented evidence proving the County and SJSD have an unconstitutional policy. (Defs.' Mot. at 6:25-26.)

Plaintiff argues SJSD had three policies that caused the constitutional violation: (1) a policy that a dog bite is no more forceful than use of a Taser, (2) a policy that they do not need to re-warn a person about the use of a dog at a closed interior door, and (3) a policy that a person struggling with a police dog is "resisting arrest" and the dog should not be called off until the person complies with officers' orders to stop resisting the dog.[4] (Pl.'s Mot. at 22:12-15.) Although Plaintiff has presented no evidence that these policies were written, a municipal "policy" need not be written or have received formal approval to be actionable. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978). "Absent a formal governmental policy, [Plaintiff] must show a 'longstanding practice or custom which constitutes the standard operating procedure of the local government entity.'" Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996) (quoting Gillette v. Delmore, 979 F.2d 1342, 1346-47 (9th Cir.

---

[4] The County has not demonstrated that the policies of SJSD are not attributable to the County. See Bacon v. Kolender, 2007 WL 2669541, at *4 (S.D. Cal. Sept. 6, 2007) (finding "relevant Ninth Circuit case law has already established that the policies of the Sheriff for the County . . . are policies directly attributable to the County . . . for purposes of [municipal] liability") (citing Streit v. County of Los Angeles, 236 F.3d 552 (9th Cir. 2001)).

14

1992)). The unwritten policy must be so "persistent and widespread" that it constitutes a "permanent and well settled city policy." Monell, 436 U.S. at 691.

The County and SJSD argue no unconstitutional policy existed since their expert, Officer Brad Smith, "has reviewed the County's use of force policies and concludes that no [unconstitutional] policy exists." (Defs.' Opp'n at 18:3-10.) Plaintiff counters he has presented evidence showing that the violations of his rights were pursuant to SJSD policy. (Pl.'s Mot. at 22:16-18.) Semillo testified that everything he did during the incident was consistent with and in accordance with SJSD policies. (Semillo Dep. at 45:17-46:12.) Semillo also testified that it is SJSD policy to not call off the dog until the person whom the dog is biting becomes passive and stops trying to push the dog away. (Id. at 83:4-18.) Lieutenant Ruben Orozco, who oversees the SJSD dog program, testified that use of the police dog was in accordance with SJSD policy. (Cook Decl., Ex. F at 51:18-24.)

The County and SJSD also argue no unconstitutional policy existed since "Officer Smith opines that the County's use of force policies comply with all applicable laws and regulations, or in other words, meet the applicable standards of care." (Defs.' Opp'n at 18:3-10.) However, under the circumstances, Officer Smith's opinion that the policies at issue are constitutional is a legal conclusion and therefore will be disregarded. See Smook v. Minnehaha County, 340 F. Supp. 2d 1037, 1044-45 (D.S.D. 2004) (holding in § 1983 action that expert's "conclusions that the [municipality's] policies and procedures were 'neither unconstitutional nor unlawful' are legal

conclusions and will be rejected to that extent"), rev'd on other grounds, 457 F.3d 806 (8th Cir. 2006).

The County and SJSD also argue that since Plaintiff has not presented an expert opinion on municipal policy, Plaintiff cannot prove his allegation that the SJSD policies in question are unconstitutional. (Defs.' Mot. at 18:16-19:7.) But Plaintiff has presented Federal Rule of Evidence 701 evidence showing genuine issues of material fact exist on the constitutionality of the subject policies. See McNeil v. City Of Allentown, 2001 WL 1468314, at *2 (E.D. Pa. Nov. 15, 2001) ("[P]laintiff must produce evidence of custom or policy to succeed against the municipal defendants under § 1983, it is well established that expert testimony is not required.") (citing Beck v. City of Pittsburgh, 89 F.3d 966, 975-76 (3d Cir. 1996)).

Since genuine issues of material fact exist on the SJSD policies in question, the motions for summary judgment on Plaintiff's excessive force claim against the County and SJSD are denied.

IV. State Law Claims

The County and SJSD seek summary judgment on Plaintiff's California Civil Code section 52.1(b) and California Constitution Article I section 13 claims against them, arguing no state law civil rights claim exists in the absence of a federal violation. (Defs.' Mot. at 13:4-5.) Plaintiff counters that summary judgment should be granted in his favor since the County and SJSD are automatically liable under the doctrine of respondeat superior. (Pl.'s Mot. at 23.) However, since issues of fact preclude summary judgment on Plaintiff's excessive force claim, both motions are denied on Plaintiff's state law claims.

///

SUMMARY

Plaintiff's summary judgment motion is denied. Defendants' summary judgment motion is granted in part and denied in part: Dunn, Semillo, Jones and Nesbitt's motion is granted on Plaintiff's warrantless entry claim based on their qualified immunity defense; the County and SJSD's motion is granted on Plaintiff's warrantless entry claim; Defendants' motion is granted on Plaintiff's unlawful arrest claim; Semillo, Jones and Nesbitt's motion is granted in part on Plaintiff's excessive force claim, since they are entitled to qualified immunity for failing to give a second warning inside Plaintiff's residence; Dunn's motion is granted on Plaintiff's excessive force claim; and the remainder of Defendants' motion is denied.

IT IS SO ORDERED.

Dated:  March 13, 2008

_____
GARLAND E. BURRELL, JR.
United States District Judge